Larry Leon **WICKER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 1175–85.

Court of Criminal Appeals of Texas, En Banc.

Oct. 21, 1987.

J. Thomas Sullivan, Dallas, for appellant.

Henry Wade, Dist. Atty. and Gary A. Moore, Elizabeth L. Phifer and Mark Nichols, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CLINTON, Judge.

In a trial before the court on a plea of not guilty, appellant was convicted of sexual assault pursuant to V.T.C.A. Penal Code, § 22.011(a)(2)(A). Punishment was assessed at fifteen years confinement in the Texas Department of Corrections. The Court of Appeals for the Fifth Supreme Judicial District affirmed. *Wicker v. State*, 696 S.W.2d 680 (Tex.App.—Dallas 1985, pet. granted).

Appellant brings three grounds for review. Specifically, appellant contends that his objection as to the voluntariness of his "confession" was properly preserved, that the lower courts erred in concluding that specific findings of fact and conclusions of law as to the voluntariness of appellant's statement were unnecessary prior to the admission of that statement in evidence against appellant in a trial before the court, and that the lower courts misconstrued Article 38.22, § 6, V.A.C.C.P., in that appellant's statutory and constitutional rights were violated by the failure of an employee of the Texas Department of Human Resources to warn appellant that any statement made by appellant could be used against him in a subsequent criminal proceeding. After setting forth the facts in sufficient detail to facilitate our discussion of appellant's grounds for review, we shall address these grounds seriatim.

### I.

In March, 1984, the fourteen year old complainant, L.C.P., was living in Balch Springs, near Dallas, with her stepmother, Angela Wicker, hereinafter Wicker, and her father, appellant in this case. Also residing with them were appellant's two sons and appellant's stepmother. Approximately the ninth of March, Wicker and appellant's stepmother left the family residence to go shopping. L.C.P. was instructed to remain on the front porch to supervise her two young brothers. Appellant

had been ill with "the flu" that day and had remained home from work.

L.C.P. went inside the house to place a spoon in the sink, and was returning to the front porch when appellant, her father, summoned her to him. Initially she refused the request, informing her father that she had been instructed to supervise her two young brothers. Then L.C.P. approached her father, who was at that time on the couch watching television. Appellant told her to go to his bedroom, and she refused. Appellant then told her to go to her own bedroom and L.C.P. complied. Her trial testimony indicated that appellant "pushed me towards my bedroom."

L.C.P. went to her bedroom and initially sat on the bed and then "laid back" on the bed. Appellant's confession states that he attempted to remove her pants but was unsuccessful, and that L.C.P. then removed her own pants and laid back on her bed. L.C.P.'s trial testimony indicated that appellant removed her pants. Both parties agree that appellant and L.C.P. then engaged in sexual intercourse and that appellant "did not use any force" immediately prior to or during the act. Afterward L.C. P. got dressed and was instructed by appellant not to tell anyone what had occurred.

Later on the same evening, L.C.P. did inform her stepmother, Wicker, of the alleged sexual assault. Wicker discussed the matter at length with appellant, out of L.C.P.'s presence.

On April 2, 1984, a referral, from a source not revealed in the record, was received by the Dallas County Child Welfare in which it was alleged that L.C.P. was being sexually abused by her father, appellant. Pursuant to this referral, Paul Thatiah, a social worker with the Texas Department of Human Resources, interviewed L.C.P. at her school in the presence of her school counselor. Based upon this interview, Thatiah "had to take her into protective custody," pursuant to Tex.Fam.Code Ann. § 17.03(a)(5) (Vernon 1986). Thatiah attempted to contact Wicker by phone but

was unsuccessful. On April 4, an assistant district attorney for Dallas County filed cause number 84–373X–305 in the district court for the 305th judicial district. That action is styled "In The Interest of [L.C.P.], a Child," and is entitled "Suit Affecting the Parent–Child Relationship, Petition for Temporary Restraining Order, Emergency Care and For Temporary Managing Conservatorship." *See* Tex.Fam.Code Ann. §§ 17.02, 17.03 (Vernon 1986). This action was based upon affidavits by Thatiah and L.C.P.

At some point not reflected in the record, Thatiah contacted Wicker by phone and discussed the alleged sexual assault with her. Appellant was out of town at that time, but Wicker contacted him and discussed the situation with Thatiah. Appellant called Thatiah on Sunday, April 8th, to discuss L.C.P.'s allegations. According to Thatiah's description of the call, appellant was "kind of dejected and depressed" and "confessed to me over the phone that he had done it, and said he was sorry and felt that he needed treatment." Wicker, testified that Thatiah "promised" that if appellant would "come in and tell his story," Thatiah "would see that he got treatment and probation, and that if he didn't he would be in serious trouble." Thatiah denied this statement at trial.

On Monday, April 9, appellant went to Thatiah's office and there executed, in his own handwriting, a statement which admitted the sexual assault of L.C.P. in early March. The statement was typed and appellant swore to the statement before a notary public. Prior to making this statement, appellant received no promises or assurances [1] from Thatiah and appellant received no warning as to his constitutional and statutory rights as set forth in Article 38.22, § 2, V.A.C.C.P. The record is silent as to the means through which this statement eventually found its way to the Dallas County District Attorney, although the original was apparently retained in the files of the Department of Human Resources.

---

1. Appellant did not testify at his trial. Appellant's counsel suggested in his cross-examination of Thatiah that appellant was promised

"treatment" and probation in exchange for a "confession."

Following this meeting, appellant was allowed to leave Thatiah's office and resume his daily affairs until the time of his subsequent arrest for sexual assault.

Appellant's trial counsel examined Thatiah on voir dire concerning the practice followed by local office of the Texas Department of Human Resources in suspected sexual abuse cases, and elicited acknowledgment that those in the office routinely attempt to obtain a statement from the accused or suspected child abuser, and then routinely forward such statements to either the district attorney or the police. Thatiah also indicated that he did not "warn people that whatever they say will be used against them." At the conclusion of this voir dire examination, counsel objected:

> "Judge, I'd object to this witness's testimony on the grounds that the statement, whatever statement was taken was not voluntary, there were no Miranda rights given, and that these people function as an arm of the State."

The objection was overruled, and appellant's statement to Thatiah was "admitted for purposes of this hearing," subject to additional constraints not relevant to our discussion.[2] No findings of fact or conclusions of law were filed with respect to the voluntariness of this statement.

## II.

In his brief to the court of appeals, appellant contended that his trial counsel had raised the issue of voluntariness of the statement by means of the above quoted language and that the trial court erred by not filing findings of fact and conclusions of law as required by Article 38.22, § 6, V.A.C.C.P., supra. The court of appeals responded as follows:

> "Appellant recognizes that the statute applies to a jury trial; however, appellant believes there is no reason to apply a different rule in a trial before the court. We disagree.

"Under article 38.22, § 6, the trial court must hold a hearing *outside the presence of the jury* when the voluntariness of a defendant's statement is in question. We hold there was no need for such a hearing because the appellant was tried before the court and a question as to the voluntariness of appellant's statement was not raised. Since no hearing was necessary, no findings of fact were necessary."[3]

*Wicker v. State,* supra, at 685. Thus the court of appeals appears to have concluded both that no issue was raised as to the voluntariness of appellant's statement to Thatiah, and that if the issue was raised, appellant's statutory rights were not violated as Article 38.22, supra, is inapplicable to a bench trial. In so doing, the lower court erred.

■ Initially we are at loss to understand the lower court's conclusion that the issue of the voluntariness of appellant's confession was not raised. Appellant's trial counsel lodged the objection above quoted prior to the introduction of the confession, and that objection clearly states in pertinent part that *"the statement,* whatever statement was taken, *was not voluntary."* Certainly the objection cannot have been overlooked in a record occupying a scant fifty-six pages of testimony.

■ This Court has long held that even though the defendant neither testifies, nor offers any evidence on the voluntariness of a statement or confession, a trial objection by counsel is sufficient to raise the issue and it is error for the trial court not to resolve that issue. *Harris v. State,* 465 S.W.2d 175, 177 (Tex.Cr.App.1971) (repeated trial objections based upon voluntariness); *Moore v. State,* 505 S.W.2d 887, 889 (Tex.Cr.App.1974) (single trial objection); *Reed v. State,* 518 S.W.2d 817, 819–20 (Tex.Cr.App.1975) (single trial objection not specifically mentioning "voluntari-

2. At the time of trial, Thatiah brought with him a copy of the statement. Over an objection based on the "best evidence rule," the trial court admitted the copy subject to the production of the original. Additionally, the statement contained material not relevant to the cause, which

material the trial court indicated that it would ignore.

3. Emphasis in the original. All other emphasis supplied by the writer of this opinion unless otherwise indicated.

ness"); *Page v. State*, 614 S.W.2d 819, 820–21 (Tex.Cr.App.1981) (single trial objection, not specifically mentioning "voluntariness," addressed to the absence of judicial warnings). Of course, the trial court need not make findings of fact with "minute specificity" as to every alleged and hypothetical possibility for physical or mental coercion. *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex.Cr.App.1979). But the trial court must make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts. *Hester v. State*, 535 S.W.2d 354, 356 (Tex.Cr.App.1976).

■ The court of appeals also erred in concluding that Article 38.22, § 6, supra, applies only to jury trials. Article 38.22, § 6, V.A.C.C.P., supra, reads in its entirety:

"In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause. Such order shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner. Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matters may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof. In any case where a motion to suppress the statement has been filed and evidence has been submitted to the court on this issue, the court within its discretion may reconsider such evidence in his finding that the statement was voluntarily made and the same evidence submitted to the court at the hearing on the motion to suppress shall be made a part of the record the same as if it were being presented at the time of trial. However, the state or the defendant shall be entitled to present any new evidence on the issue of the voluntariness of the statement prior to the court's final ruling and order stating its findings."

■ While it is obvious that substantial portions of the statute refer specifically to the procedure to be followed in a jury trial, we find no language limiting its applicability solely to those trials in which a jury sits as finder of fact. Quite the contrary, this Court has specifically held that although the trial may be to the court, a "determination by the trial judge of the defendant's confession prior to its admission in evidence is a constitutional and statutory requirement, and such determination must distinctly appear in the record." *McKittrick v. State*, 535 S.W.2d 873, 875 (Tex.Cr.App.1976), *citing, Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967); Article 38.22, § 6, V.A.C.C.P., supra. Indeed, we reiterate our prior holdings to the effect that Article 38.22, § 6, supra, is mandatory in its language and that it requires a trial court to file its findings of fact and conclusions of law regarding the voluntariness of a confession whether or not the defendant objects to the absence of such omitted filing. *McKittrick v. State*, supra, at 876; *Dykes v. State*, 649 S.W.2d 633, 636 (Tex. Cr.App.1983). The procedures used in the trial court to determine the voluntariness of a defendant's confession *must* "be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of the disputed facts upon which the voluntariness may depend." *Jackson v. Denno*, 378 U.S. at 391, 84 S.Ct. at 1788, 12 L.Ed.2d at 924 (1964). This requirement is no less compelling when trial is to the court rather than to a jury.

■ Whether the trial court files findings insufficient in detail to allow an appellate court to resolve the dispute upon which an appealing party predicates his appeal, as in *Hester v. State*, supra, and *Quinn v. State*, 558 S.W.2d 10 (Tex.Cr.App.1977), or no findings are made to support the ruling of the trial court on the voluntariness issue, as in *Figueroa v. State*, 473 S.W.2d 202 (Tex.Cr.App.1971); *Davis v. State*, 499 S.W.2d 303 (Tex.Cr.App.1973) (opinion on original submission); *McKittrick v. State*, supra, the duty of the appellate court is clear. The proper procedure is that the appeal will be abated and the trial judge will be directed to reduce to writing his findings on the disputed issues surrounding the taking of appellant's confession. *McKittrick v. State*, supra, at 876; *Bonham v. State*, 644 S.W.2d 5, 8 (Tex.Cr.App. 1983). The trial judge may review the transcription of the testimony upon which his original ruling was made, if necessary, in order to refresh his recollection of the reasons behind such ruling. *Hester v. State*, supra, at 356; *McKittrick v. State*, supra, at 876.

Thus the court of appeals erred in concluding that the issue of the voluntariness of appellant's statement to Thatiah was not properly raised and preserved on appeal, and in concluding that Article 38.22, § 6, supra, is inapplicable to a trial to the court. *Wicker v. State*, supra, at 685. Ordinarily we would be compelled to remand this cause to the court of appeals with instructions to abate the appeal pending compliance by the trial court with the mandate of Article 38.22, supra. However, in light of our disposition of appellant's remaining ground for review, remand and abatement of the cause are unnecessary.

III.

Appellant's remaining ground for review is that his rights under the Fifth and Sixth Amendments to the United States Constitution, as well as his rights under Article 38.22, supra, were violated when the statement given by him to Thatiah was admitted in evidence against him because there were no warnings issued to appellant prior to the giving of the statement. The court of appeals examined *Newberry v. State*, 552 S.W.2d 457 (Tex.Cr.App.1977) and *Rathmell v. State*, 653 S.W.2d 498 (Tex.App.— Corpus Christi 1983, pet. ref'd) and concluded that "appellant ... was not in custody or otherwise deprived of his freedom of action in any significant way at the time he gave his statement to Mr. Thathia (sic)." *Wicker v. State*, supra, at 683–84. Thus the lower court concluded that appellant's statutory and constitutional rights were not violated by the circumstances surrounding the giving of his statement to Thatiah. *Id.* at 684. Although we feel that appellant's contention warrants closer analysis than provided by the lower court, we are of the opinion that the lower court has arrived at the correct disposition of that contention.

Appellant relies upon the constitutional guarantees of the Fifth and Sixth Amendments, as well as the statutory provisions of Article 38.22, § 2, V.A.C.C.P.,[4] to support his argument that the statement given to Thatiah was inadmissible against him

---

4. Article 38.22, § 2, V.A.C.C.P., provides in relevant part:

Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, ... received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

because he was not warned of his right to remain silent and his right to counsel.[5]

We note at the outset that this Court has recently analyzed Article 38.22, supra, and has concluded that the term "custodial interrogation" was intended by the legislature to be construed consistently with its meaning under the Fifth Amendment to the United States Constitution. *Bass v. State,* 723 S.W.2d 687, 690–91 (Tex.Cr.App.1986). Thus, examination of the Supreme Court's treatment of "custodial interrogation" under the Fifth Amendment will facilitate the formulation of a proper construction of Article 38.22, supra.

Naturally our analysis begins with Chief Justice Warren's often quoted passage from *Miranda v. Arizona,* wherein he encapsulated the Fifth Amendment protection as follows:

> "Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.*"
>
> *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).[6]

In a footnote, the Court indicated that the concept of "custodial interrogation" was

what it had meant in its decision in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), when it established restrictions on questioning a suspect out of the presence of counsel after the police investigation had become "focused" on the suspect. However, "focus" is not necessarily equivalent to "custody." *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

■ Custodial interrogation occurs, and *Miranda* warnings are required, when questioning takes place in a prison setting during a suspect's term of imprisonment on a separate offense, *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), when questioning occurs in an individual's home after he has been arrested and is no longer free to leave, *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), and, of course, when a suspect is "picked up" on less than probable cause, taken to police headquarters in a police car and subsequently questioned in an interrogation room, *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). However, the Court has cautioned that a non-custodial situation is not converted into one in which *Miranda,* supra, applies in the absence of a formal arrest or restraint on freedom of movement merely because an appellate court concludes that the questioning occurred in a "coercive environment." *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977). Indeed, the *Mathiason* court noted that any questioning by police will have coercive aspects to it, simply by virtue of the police officer's role in the law enforcement sys-

---

5. Appellant's Ground for Review II states: "The court erred in holding that Appellant's rights under Tex. Code Crim.Proc. art 38.22 and the Fifth and Sixth Amendments to the Constitution of the United States were not violated when his statement was taken prior to warning him of his right to remain silent and his right to counsel."

  However, the discussion accompanying this ground for review addresses generally the applicability of Article 38.22, § 2, supra, and is not limited to those two rights specifically mentioned in the heading to Appellant's ground for review. Accordingly, we address the applicability of Article 38.22, supra, as did appellant in his brief.

6. Examination of the above-quoted language from *Miranda,* supra, suggests a dual analysis involving whether appellant's questioning at Thatiah's office constitutes "custodial interrogation" as well as whether Thatiah falls within the scope of the phrase "law enforcement officers." Article 38.22, § 2, supra, at note 4, necessitates only the inquiry into "custodial interrogation," and our resolution of that issue is dispositive of appellant's ground for review. Accordingly, we express no view as to whether, under the circumstances, Thatiah was acting as a "law enforcement officer."

tem. Police are not required to give *Miranda* warnings to everyone whom they question; rather, the warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.* at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719.

Later cases have clarified the scope and breadth of the *Miranda* protections. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), held that the admission at the penalty phase of capital murder trial of the testimony of a psychiatrist who conducted a court-ordered pretrial competency examination violated the defendant's rights under both the Fifth and Sixth Amendments. The court in *Smith* specifically concluded that the custodial interrogation to which Earnest Smith was subjected gave rise to the protections set forth in *Miranda*, and opined that the fact that Smith was questioned by a court-appointed psychiatrist and not a police official was "immaterial." *Id.* at 467, 101 S.Ct. at 1875, 68 L.Ed.2d at 371–72. When the psychiatrist went beyond reporting to the trial court on the issue of Smith's competence to stand trial and testified on behalf of the State at the penalty phase of Smith's trial, then the doctor's fundamental role changed and he became in essence an agent for the State. Thus the examination was on a par with any other unwarned post arrest custodial interrogation. *Id.* at 467, 101 S.Ct. at 1875, 68 L.Ed.2d at 372. *Miranda* has since been extended to cover custodial interrogation of one suspected of even a misdemeanor traffic offense. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

The *Miranda* doctrine is not without its limitations, of course. For instance, the protection afforded by *Miranda* is inapplicable in those situations in which there is a prompt or immediate concern for public safety, *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), as well as in those situations involving only roadside questioning of one stopped pursuant to a traffic violation. *Berkemer v. McCarty*, supra.

The ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983). Certainly a person need not be under "formal" arrest in order to be considered being in custody. This Court has delineated a set of factors which are to be examined in light of the specific facts of each case to ascertain whether a person is "in custody," so as to invoke the protections of *Miranda*, supra, and thus Article 38.22, supra. Those factors are whether probable cause to arrest existed, whether the defendant was the focus of the investigation, the subjective intent of the police, and the subjective belief of the defendant. *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Cr.App.1985); *Turner v. State*, 685 S.W.2d 38, 42 (Tex.Cr.App.1985); *Ruth v. State*, 645 S.W.2d 432 (Tex.Cr.App.1979); *Newberry v. State*, 552 S.W.2d 457 (Tex.Cr. App.1977); *Ancira v. State*, 516 S.W.2d 924 (Tex.Cr.App.1974).

An examination of these factors, with reference to the facts of appellant's case, demonstrates that he was not "in custody" at the time he gave his statement to Thatiah. As was the case in *Shiflet*, supra, *Turner*, supra, and *Brown v. State*, 475 S.W.2d 938 (Tex.Cr.App.1971), appellant voluntarily went to Thatiah's office to provide a statement. Indeed, although the testimony was controverted as to whether Thatiah offered to assist appellant in obtaining treatment and probation in exchange for a statement, there is no contention that appellant was not allowed to leave Thatiah's office after the statement was given. Moreover, appellant orally admitted having engaged in sexual intercourse with L.C.P. to Thatiah in a telephone call on Sunday, April 8. That call was initiated by appellant, in response to Thatiah's earlier calls to appellant's wife. Appellant repeated the substance of this statement to Thatiah the following day during their discussion in Thatiah's office. While it is true that Thatiah suggested that appellant reduce the statement to writing, there is nothing to suggest that appellant's free-

dom of action was in any way hampered before, during, or after he agreed to execute the written statement.

Appellant stresses on appeal that Thatiah's having taken L.C.P. into protective custody, the subsequent filing of a suit to terminate appellant's parental rights, and the alleged promises of treatment and probation in exchange for a statement combine to establish a coercive atmosphere in which appellant was functionally "in custody." However, the Supreme Court has cautioned that a non-custodial situation is not converted into one in which *Miranda,* supra, applies in the absence of a formal arrest or restraint on freedom of movement merely because an appellate court concludes that the questioning occurred in a "coercive environment." *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719. While this case is a close one indeed, we are unable to conclude that these circumstances amount to "custodial interrogation." Assuming arguendo that Thatiah *was* an agent of the State,[7] we are unable to distinguish this case from *Oregon v. Mathiason,* supra, wherein the Supreme Court concluded that no custodial interrogation had occurred.

Indeed, the facts of *Mathiason* are more compelling than those of appellant's case. Mathiason was a parolee who was suspected of involvement in a neighborhood theft. He voluntarily went to the office of the Oregon State Police and discussed the matter with an agent of the state police. The interview lasted approximately thirty minutes and during the initial portion of the interview the police officer (falsely) told Mathiason that his fingerprints were found at the scene of the burglary. Mathiason confessed his guilt within the first five minutes of the interview, received the *Miranda* warnings, and provided police with a taped confession. At the end of the interview, Mathiason was allowed to leave the offices of the state police and the interrogating officer informed him that he was referring the case to the district attorney. *Oregon v. Mathiason,* 429 U.S. at 493–94,

97 S.Ct. at 713, 50 L.Ed.2d at 718. The per curiam opinion, expressing the views of six members of the Court, concluded that there was "no indication that the questioning took place in a context where [Mathiason's] freedom to depart was restricted in any way." *Id.* at 495, 97 S.Ct. at 714, 50 L.Ed. 2d at 719. After noting that any questioning by police authorities will have some coercive elements, the Court cautioned that the *Miranda* protections are not to be imposed "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Id.* Assuming, arguendo, that Thatiah may be considered the functional equivalent of a police officer, and that his office is the functional equivalent of the station house, we are unable to conclude that appellant's interview with Thatiah falls within the ambit of custodial interrogation.

Neither the protections set forth in *Miranda,* supra, nor those of Article 38.22, supra, prohibit the introduction of appellant's confession. Subject to our earlier remarks regarding compliance with the mandate of Article 38.22, § 6, supra, and viewed from the unusual and peculiar circumstances of this case, we hold that appellant was not in custody when he made his oral statements to Thatiah. The statement was admissible evidence pursuant to Article 38.22, supra.

The judgment of the court of appeals is affirmed.

TEAGUE, Judge, concurring and dissenting.

This Court should put its "improvidently granted with a disclaimer" stamp to appellant's petition for discretionary review.

One disclaimer would go to the holding by the court of appeals that appellant failed to object in the trial court to the admissibility of his *oral* statement that he made to a criminal investigator employed by the Department of Human Resources on

---

7. We decline to adopt the position advocated by appellant, *viz,* that Thatiah *was* the functional equivalent of a police officer. We leave this issue an open one, and intimate no opinion as to its resolution. See note 6, supra.

the ground that it was involuntarily given. The record clearly reflects that when appellant's *oral* statement to the criminal investigator was offered into evidence, appellant's attorney timely, specifically, and expressly objected on the ground that it was involuntarily obtained. See Statement of Facts, Volume I of I Volume, at page 26, which reflects that when appellant's *oral* statement was offered into evidence by the prosecutor, appellant's trial counsel objected because, inter alia, "the statement, whatever statement, was not voluntary ..." After a short "voir dire" hearing, about which appellant does not complain, the trial judge overruled the objection without comment. See page 26. Thus, appellant expressly objected to the admission into evidence of his *oral* statement because, inter alia, it was not voluntarily made, and the court of appeals clearly erred in holding to the contrary.

The next disclaimer would go to the holding by the court of appeals that because this was a bench trial and not a jury trial the trial judge was not required to make and enter any findings of fact and conclusions of law concerning the voluntariness of appellant's *oral* statement that was admitted into evidence over objection. Art. 38.22, § 6, V.A.C.C.P., expressly requires that when the issue of the voluntariness of a defendant's statement is raised, a hearing must be held, after which the trial judge is charged with the duty and responsibility of making and entering findings of fact and conclusions of law, concerning the voluntariness of the statement. The statutory provision makes no distinction between a jury trial and a trial to the court, nor does it make any distinction between an oral statement and a written statement. The court of appeals clearly erred in holding that findings of fact and conclusions of law need not be made by the trial judge when there is a bench trial.

Notwithstanding that the court of appeals erred in disposing of the above two issues, and what actually causes me to recommend that this Court put its "improvidently granted with a disclaimer" stamp to appellant's petition for discretionary review rests in the fact that if there was any error

in the admission into evidence of appellant's *oral* statement, such error, if any, was cured when appellant's *written* statement was later admitted into evidence. The doctrine of curative admissibility provides that a defendant may waive his objection to what he claims was improperly admitted evidence by not later properly objecting when evidence is later adduced that establishes the same facts or evidence that was earlier admitted into evidence. See 3 *Texas Criminal Practice Guide*, § 73.05[1][c]. In this instance, the record is clear that when appellant's *written* statement, in which he told about the time that he "spread her [the complainant's] legs and started having intercourse with [the complainant]", and what he did thereafter, as well as admitting that he "spent three years in prison for [doing] the same thing," was offered into evidence, he only made the following objections: "Your Honor, I'm going to object on two bases. One is that the statement contains things that are irrelevant to this case, and two, that based on the best evidence [the written statement is not admissible evidence], and is unduly prejudicial because of the irrelevant statements." The trial judge ruled as follows: "Subject to your [the prosecutor] bringing the original [of the written statement] in, I will admit this [the statement] at this time ... The Court will ignore any irrelevancies in the statement. The statement will be admitted for purposes of this hearing [sic], subject to the original being produced." Record Volume I of Volume I, at page 30. As easily seen, nowhere in his objections did appellant voice the complaint that the *written* statement was "not voluntary, there were no Miranda rights given, and that these people function as an arm of the State" as he had stated when his *oral* statement to the criminal investigator was offered into evidence, and I do not find in the appellate record where he has ever complained that the prosecutor did not produce the original of the *written* statement or that he has ever complained that the trial judge considered any "irrelevant" evidence that might be contained within the *written* statement.

If appellant is arguing that when he made his *oral* statement to the criminal investigator he was then in "custody", given this record, that argument is nonsense.

Given the facts of this case, when appellant *orally* admitted to the criminal investigator, *over the telephone*, that he "had done it", it is obvious to me and should be obvious to anyone that he was not then in "custody" and was not then subjected by the criminal investigator to "custodial interrogation". See and compare, for example, *Shiflet v. State*, 732 S.W.2d 622 (Tex. Cr.App.1985).

I emphasize: When appellant's *written* statement was offered into evidence, appellant only objected to its admission on the following grounds: "Your Honor, I'm going to object on two bases. One is that the statement contains things that are irrelevant to this case, and two, that based on the best evidence, [it is not admissible], and it is unduly prejudicial because of the irrelevant statements." When the trial judge ruled that the *written* statement's admissibility was subject to the prosecutor "bringing the original in" and also ruled that "The Court will ignore any irelevancies in the statement", I find that appellant actually received favorable rulings on his two objections. I do not find anywhere in the record on appeal where appellant ever complained that the prosecutor did not "bring the original in" or where he ever complained that the trial judge considered any "irrelevant" matter that might have been contained in appellant's *written* statement.

Therefore dear reader, given what occurred in the trial court, beware of the discussion that is contained on pages 9 through the first line on page 18 of the majority opinion, inclusive, that relates to the discussion about the admission into evidence of appellant's *written* statement. Otherwise, you, too, like the court of appeals and those judges of this Court who join the majority opinion, might find yourself seeing double. I confess: After carefully reading the court of appeals' opinion and this Court's majority opinion, I chased rabbits for about three days until I stopped one day to rest. While resting, I read the entire statement of facts and the briefs that were filed in this cause. I then saw that the issue of the admissibility of appellant's *written* statement was not properly before the court of appeals for review purposes.

If, in considering the subject "custodial interrogation", one wishes to consider other than the facts that were then present when appellant's *written* statement was admitted into evidence, as the majority opinion does, I suggest that he first go and read *Shiflet*, supra, and *Paez v. State*, 681 S.W.2d 34 (Tex.Cr.App.1984). Given the facts and the law, *Paez*, supra, of course, should be quickly and expressly overruled by this Court when the opportune time presents itself. This case, however, is not the case that should be used to expressly overrule *Paez*, supra.

In conclusion, I believe, contrary to the majority opinion, and what this Court stated and held in *Paez*, supra, which, understandably, I do not find the majority opinion ever mentions, that the legal term "custodial interrogation" can become applicable in other than "a prison setting."

For the above reasons, I would put this Court's "improvidently granted with a disclaimer" stamp to appellant's petition for discretionary review.