ACCEPTED
12-14-00044-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
10/15/2015 11:28:47 AM
Pam Estes
CLERK

In The Twelfth Court Of Appeals
Tyler, Texas

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

10/15/2015 11:28:47 AM

PAM ESTES
Clerk

No. 12-14-00044-CR

Shakeitha Cartwright, Appellant
v.
The State of Texas, Appellee

On Appeal from the 273rd District Court, Shelby County, Texas
Trial Court Cause No. 2013-CR-18695

## APPELLANT'S BRIEF IN RESPONSE TO THE COURT'S 09/25/2015 PER CURIAM ORDER

Seth T. Johnson, Tex. Bar No. 24082212
Attorney for Appellant
928 N University Dr.
Nacogdoches, Texas 75961
P: (936) 205-6775
F: (936) 715-3022
Email: johnsondefenselaw@gmail.com

1

**INDEX OF AUTHORITIES**

Tex. Code. Crim. Proc. Ann. art. 38.22, § 6

Garcia v. State, 15 S.W.3d 533 (Tex. Crim. App. 2000)

Vasquez v. State, 411 SW 3d 918 (Tx. Ct. Crim. App. 2013)

Velez v. State, No. AP-76,051 (Tex. Ct. Crim. App. 2012)(not designated for publication)

Dronet v. Texas, No. 09-11-00444-CR (9th J.D. Court of Appeals)(PER CURIAM ORDERS – Feb. 28, 2013 & May 2, 2013)

Urias v. State, 155 SW 3d 141 (Tx. Ct. Crim. App. 2004)

Wicker v. State, 740 S.W.2d 779 (Tx. Ct. Crim. App. 1987)

Guzman v. State, 955 SW 2d 85 (Tx. Ct. Crim. App. 1997)

Bass v. State, 626 S.W.2d 769 (Tex. Ct. Crim. App. 1982)

Marin v. State, 851 SW 2d 275 (Tx. Ct. Crim. App. 1993)

# I. SYNOPSIS

Appellant argues that a *de novo* suppression hearing is required in this case pursuant to Tex. Code Crim. Proc. art. 38.22, § 6, and Garcia v. State, 15 S.W.3d 533, 536 (Tex. Crim. App. 2000) (remanding for *de novo* suppression hearing and rejecting the written findings of a successor trial judge who did not preside over the original suppression hearing). (*Appellant's Motion to Abate Appeal, 02/16/2015*).

The State objects that Appellant waived the argument that the trial judge could not read and rely on the prior recorded testimony at the initial Jackson v. Denno hearing "because defense trial counsel expressly consented to the trial judge reading the prior record to make his voluntariness determination". (*Per Curiam Order, 09/25/2015*).

Assuming *arguendo* that the actions of Appellant's trial counsel meet the criteria required to establish procedural default or invited error, the State's objection fails to cite any authority for the proposition that either of those waiver doctrines is actually applicable or relevant in the context of *Garcia* error. Garcia v. State, 15 SW 3d 533 (Tex. Ct. Crim. App. 2000). Appellant cannot find a single case supporting said proposition either.

As a preliminary matter, it is indisputably clear that the trial court's duty to enter written findings and conclusions under art. 38.22, § 6 is mandatory, without exception, and not subject to waiver at any level of the proceedings. *See* Vasquez v. State, 411 SW 3d 918 (Tx. Ct. Crim. App. 2013); Urias v. State, 155 SW 3d 141 (Tx. Ct. Crim. App. 2004); Wicker v. State, 740 S.W.2d 779 (Tx. Ct. Crim. App. 1987).

*Garcia* addressed the narrower question of who has the authority to make those written findings, i.e., which trial court judge? *Garcia* held that if the resolution of a defendant's

challenge to the voluntariness of his statement depends in part on an evaluation of the credibility and demeanor of witnesses or evidence, the art. 38.22 § 6 findings and conclusions of law must be entered by the same judge who presided over the suppression hearing at which the testimony and evidence was offered. *Garcia* at 536. The judge who presided over Garcia's suppression hearing denied the motion but failed to enter written findings of fact and conclusions of law. Later, when the first judge became unavailable, a successor judge read the written transcript of the suppression hearing and then made the written findings. *Garcia* at 535-36. The CCA remanded Garcia's case for a *de novo* suppression hearing because the second judge*'s* findings were based on a "cold" record*. Id.*

The *Garcia* majority specifically declined to address whether the defendant may waive such error. *Id., Footnote 5.* Caselaw interpreting *Garcia* is sparse as well but the authority that does exist uniformly does not favor the State's contention. **The consistent theme appearing throughout the Court of Criminal Appeals' holdings in *Garcia*, *Urias, and Vasquez,* and their progeny, is the objective of upholding the integrity of Art. 38.22 § 6's mandate, and the standards of appellate review, that collectively govern the procedures for reviewing involuntariness claims at trial and on appeal.**

"The determination of whether a statement is voluntary is a mixed question of law and fact, i.e., an application of law to a fact question." *Garcia* at 535. *Garcia* then cites the standard of review articulated in Guzman v. State, 955 SW 2d 85 - Tex: Court of Criminal Appeals 1997. *Garcia* at 535.

> "[A]ppellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. See, e.g., *Villarreal,* 935 S.W.2d at 139-41 (McCormick, P.J., concurring). The appellate

4

courts, including this Court, should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Guzman* at 89.

**Keeping in mind *Vasquez's* absolute requirement for written findings from the trial court, the problem with making *Garcia* error subject to the rules of procedural default or invited error, is that a situation can arise where the appellate court is applying the *Guzman* "total deference" standard of review to a successor trial judge's art. 38.22 § 6 findings even when those findings are not based on an evaluation of the credibility of the testifying witnesses and evidence, but rather on the successor trial judge's review of a "cold record".**

As discussed *infra,* Appellant's case presents this problem squarely. The trial court proceedings pertaining to the adjudication of Appellant's involuntariness challenge were unreliable at best, and clearly violated TCCP Art. 38.22 § 6, *Vasquez, and Garcia.* The ruling of the successor judge denying Appellant's motion, and the now-proffered ex post facto findings in support of that ruling (which were drafted solely by the District Attorney), should not be accorded any deference by this Court, much less the 'total deference' required by *Guzman*. Appellant's primary, if not her sole issue on appeal, will concern whether her statements to law enforcement were voluntary. Under the circumstances, the only remedy is a remand to the trial court for a *de novo* suppression hearing before this appeal should proceed, with proper findings entered to supplement the appellate record.

Appellant's brief will first discuss the law pertaining to *Garcia* error, the two recognized exceptions to *Garcia*, and why the rules of procedural default have not been applied to *Garcia* error. Thereafter Appellant will apply the present state of the law to the facts of her case.

## II. GARCIA V. STATE, 15 SW 3d 533 (Tex. Crim. App. 2000)

A pre-trial hearing was held on Garcia's involuntariness claim. The trial judge without the entry of written findings or conclusions denied the motion. After conviction, the appellate court remanded for compliance with TCCP art. 38.22 § 6. However, the trial judge on remand was not the same judge who presided over Garcia's suppression hearing. The first judge was not available to be appointed. After the conviction was affirmed, Appellant filed a motion for rehearing objecting for the first time that the successor judge was not authorized to make the required findings.

PDR was granted to determine "whether appellant was entitled to remand for a new suppression hearing" and the CCA held that Appellant "was entitled to a new hearing on the voluntariness of his statement." _Garcia_ at 534-35, 536.

> "The determination of whether a statement is voluntary is a mixed question of law and fact, i.e., an application of law to a fact question . . .. In the instant case, the trial court held a hearing pursuant to appellant's motion to suppress his statement on the basis that it was involuntary. At the hearing, testimony was taken from Abdon Rodriguez, the police officer who took appellant's confession, and from appellant. Thus, the trial court's conclusion that appellant's statement was voluntary was based on a direct evaluation of the witnesses' credibility and demeanor.
>
> Recently, we stated that "appellate courts ... should afford [almost total] deference to trial courts' rulings on `application of law to fact questions,' also known as `mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." _Guzman v. State,_ 955 S.W.2d 85, 89 (Tex.Crim.App.1997). This is the proper standard of review because the trial judge viewing the witnesses and hearing their testimony is in a better position to evaluate their credibility and demeanor than is an appellate judge who must rely on only a written transcript of the hearing. **For the same reason, it is not appropriate for the second judge in the instant case to make findings of fact based solely on the written transcript of the initial hearing. It is inconsistent to restrict an appellate court's review of such findings because it has nothing to review but a "cold" record, yet allow a trial judge to make such findings based on nothing but that same "cold" record**_." Id._ at 535 (emphasis added).

*Garcia* noted one exception to this rule, citing <u>*Bass v. State*</u>, 626 S.W.2d 769 (Tex.Crim.App.1982):

> "[I]t was permissible for the second trial judge in *Bass* to decline to hold a hearing on the voluntariness of the confession because such a hearing had already been held and findings of fact and conclusions of law had previously been entered by the trial judge who presided over that hearing. **That is, both the second trial judge and the appellate court could rely on written findings of fact and conclusions of law made by the judge who presided over the hearing and evaluated the credibility and demeanor of the witnesses. In the instant case, however, an order containing such an evaluation does not exist, and the only order which does exist was not based on a direct evaluation of the credibility and demeanor of the witnesses by the judge who made the written findings.**" *Garcia* at 536.

The *Garcia* majority declined to consider procedural default issues in reaching their conclusion:

> "The dissent argues that <u>*Wicker v. State,* 740 S.W.2d 779, 783 (Tex.Crim.App.1987),</u> *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988)(" Article 38.22, § 6, supra, is mandatory in its language and that it requires a trial court to file its findings of fact and conclusions of law regarding the voluntariness of a confession whether or not the defendant objects to the absence of such omitted filing"), should be overruled and appellant should be held to have waived error, based on his failure to object to the trial court's failure to make written findings of fact and conclusions of law. *Post,* at 537-39 (Keasler, J., dissenting). However, we have no jurisdiction to take such action . . .. the issues of the continuing validity of *Wicker* and appellant's failure to object to the lack of written findings of fact and conclusions of law are not before us now." *Garcia,* Footnote 5.

While it was not addressed in *Garcia,* numerous CCA cases in the fifteen years since *Garcia* was decided have affirmed the continued validity of *Wicker* however. *See* <u>Vasquez v. State</u>, 411 SW 3d 918 (Tx. Ct. Crim. App. 2013); <u>Urias v. State</u>, 155 SW 3d 141 (Tx. Ct. Crim. App. 2004). Since 2013, *Urias* and *Vasquez* have been collectively cited over one hundred times with approval.

## III. VELEZ v. STATE, No. AP-76,051 (Tex. Ct. Crim. App. 2012)(not designated for publication)

*Velez* is the only CCA case to discuss and apply *Garcia* to the successor judge fact-pattern. For that reason alone it deserves consideration as persuasive authority. Particularly noteworthy is that fact that the State did raise a procedural default argument. The CCA ignored that argument however and instead created a second exception to *Garcia* (*Bass* being the first). **Once again, the issue was scrutinized by the CCA solely through the lens of trial court credibility determinations and appellate standards of review, rather than the more typical *Marin* analysis**. *See* Marin v. State, 851 SW 2d 275 (Tx. Ct. Crim. App. 1993).

In *Velez,* appellant argued "that the trial judge who entered the findings fact and conclusions of law relating to appellant's suppression hearing lacked the authority to issue those findings because she was not the judge who presided over the suppression hearing." (*Velez*, Point of Error Ten). The state responded, "that appellant waived this error because he did not present a timely written motion to the trial court. *Id.*

*Velez* was a direct appeal of a capital murder conviction. The original trial judge conducted a hearing on appellant's motion to suppress. The trial judge announced his ruling from the bench, denying appellant's motion to suppress, but did not enter written findings of fact or conclusions. The CCA ordered the trial court to prepare and file the required findings and conclusions under TEX. R. APP. P. 34.5(c)(2). However, the judge who presided over the suppression hearing was not available to be appointed, and ultimately a successor judge "prepared findings and conclusions based on the record **and the prior judge's ruling** that the statement was voluntarily made." *Id.* Appellant argued in his appeal that *Garcia* entitled him to a *de novo* suppression hearing.

8

The CCA stated that "[i]n *Garcia,* however, we did not specifically address the rare situation that presents itself here, wherein the prior judge cannot be appointed to prepare findings of fact and conclusions of law because of unavailability or ineligibility." *Id.*

> "In such a situation, **where the prior judge is unavailable** or ineligible for an appointment, we find it appropriate that there be an exception to the rule laid out in *Garcia.* **In the event that the judge who presided over a suppression hearing is unavailable** or ineligible to be appointed to prepare findings of fact and conclusions of law, the current trial judge may prepare findings and conclusions **based on the prior judge's ruling on the record** and the transcript of the suppression hearing regarding whether a defendant's statement was voluntarily made." *Id.*

## IV. DRONET V. TEXAS, No. 09-11-00444-CR (9th J.D. Court of Appeals)(PER CURIAM ORDERS – Feb. 28, 2013 & May 2, 2013)

*Dronet* is the only intermediate Court of Appeals decision (in any form) to construe and apply *Garcia* to the successor judge scenario that Appellant could locate. The Per Curiam Orders, issued during the pendency of Dronet's direct appeal, are noteworthy because they explicitly consider the issue of repeated procedural default or waiver by the Defendant. Notwithstanding that, the 9th Court of Appeals granted Dronet's much-delayed request for a *de novo* suppression hearing.

### A. February 28, 2013 Per Curiam Order

"In this appeal Terri Leann Dronet has challenged the voluntariness of her confession. On submission of the appeal, it became apparent that the judge who heard the motion to suppress did not make findings of fact and conclusions of law. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 2005). At the Court's request, the parties stated their positions regarding whether the appeal must be abated and the case remanded to the trial court for a new suppression hearing and findings of fact and conclusions of law. *See Garcia v. State*, 15 S.W.3d 533, 536-37 (Tex. Crim. App. 2000). The State contends that the appellant procedurally defaulted by failing to request written findings. *See State v. Terrazas*, 4 S.W.3d 720, 728 (Tex. Crim. App. 1999). In the alternative, the State argues that because the judge who heard the motion to suppress is deceased, the present trial judge may prepare findings of fact and conclusions of law without explicit credibility determinations. Appellant notes that

she has not requested findings of fact and conclusions of law; moreover, she has not requested a new suppression hearing before the present trial judge.

The most recent published opinion of the Court of Criminal Appeals on this issue states that article 38.22, § 6 is mandatory and requires that findings be made without regard to whether the defendant has objected to the absence of the omitted findings. *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004); *see also* Tex. Code. Crim. Proc. Ann. art. 38.22, § 6. It appears the Court of Criminal Appeals considers entry of findings a duty of the court that arises whether or not the parties request findings. The Court of Criminal Appeals has held that it is not appropriate for a judge, over the objection of the appellant, to make findings of fact and conclusions of law that require an evaluation of credibility and demeanor based solely upon a record of a previous hearing at which a different judge presided. *Garcia*, 15 S.W.3d at 535-36. Neither an objection to the lack of findings nor a request for a new suppression hearing has been made by the appellant; consequently we are presented only with the necessity of complying with the statute and obtaining findings sufficient to conduct an appellate review of the voluntariness of the confession.

It is, therefore ORDERED that the appeal is abated and the case is remanded to the trial court for further proceedings relating to a determination of the voluntariness of the appellant's confession. *See* Tex. R. App. P. 44.4. At the appellant's request, the trial court may conduct a new suppression hearing. The trial court shall make findings of fact and conclusions of law. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6."

#### B. May 2, 2013 Per Curiam Order

"In this appeal Terri Leann Dronet has challenged the voluntariness of her confession. On submission of the appeal, it became apparent that the judge who heard the motion to suppress did not make findings of fact and conclusions of law. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 2005). The judge who heard the motion to suppress subsequently died. On February 28, 2013, we abated the appeal and remanded the case to the trial court for further proceedings relating to a determination of the voluntariness of the appellant's confession. *See* Tex. R. App. P. 44.4. Our Order of February 28, 2013 authorized the trial court to conduct a new suppression hearing at the appellant's request, but evidently the trial court was not aware that the appellant desired to have the trial court conduct a new suppression hearing when the trial court made written findings based on the record of the previous hearing. The appellant has requested a new hearing before the new judge. *See Garcia v. State,* 15 S.W.3d 533, 535-37 (Tex. Crim. App. 2000).

It is, therefore ORDERED that the appeal is abated and the case is remanded to the trial court for a new suppression hearing. The trial court shall make findings of fact and conclusions of law. *See* Tex. Code. Crim. Proc. Ann. art. 38.22, § 6."

## V. APPLICATION OF *VASQUEZ, GARCIA, VELEZ,* AND *DRONET* TO APPELLANT'S SUPPRESSION HEARING

On May 7, 2013 Appellant filed a pre-trial "Motion to Suppress Statement of Defendant" alleging that her statements to law enforcement were involuntary in violation of Art. 38.22, Tex. Code Crim. Proc., and U.S. Const. Amend. 5 & 14. (CR, Vol.1, p. 23)[1]. Specifically, her motion alleged that the statements were made under "extreme duress" while Appellant was in a "state of shock" and "severely depressed", and that she was mentally incompetent at the time. *Id.* The motion explicitly requested that the trial Judge enter "specific findings of fact and conclusions of law". *Id.*

**A. The Testimony and Video Evidence Admitted During the July 8, 2013 Hearing Made the Resolution of Appellant's Motion Dependent Upon an Evaluation of Credibility and Demeanor**

On July 8, 2013 Appellant's motion came on to be heard before the Hon. Charles Dickerson, 123rd District Court. (RR. Vol.3, p.1). The three law enforcement officers responsible for interrogating Appellant and taking her written statement testified at the hearing. (RR. Vol.3, p.11-74). Three DVD recordings of Appellant's videotaped interrogation, totaling approximately 8 hours (State's exhibits #1-3), as well as Appellant's handwritten statement (State's exhibits #4) were admitted into evidence. (RR. Vol.3, p. 3, 7-8, 40). The intent and understanding of both parties was for Judge Dickerson to watch the video recordings on his own. (RR.Vol.3, p.9 – District Attorney advising Judge on how to play the videos) (RR.Vol 5, p.193 – District Attorney recounting that videos were tendered to Judge Dickerson for his review).

---

[1] The clerk's record is referenced as "CR" followed by volume and page number. The reporter's record is referenced as "RR" followed by volume and page number.

The primary focus during the hearing concerned Appellant's mental state and demeanor during interrogation. There was frequent disagreement between the testifying officers and defense counsel on this issue. While Cartwright did not testify during the suppression hearing (RR Vol. 3, p. 10 – defense counsel awaiting psychological evaluation), from an evidentiary standpoint, the factual disagreements were put at issue for the trial court by reference to allegedly contradictory video evidence as well as Cartwright's actual video-recorded statements.

Appellant's "demeanor" during interrogation was a subject of frequent disagreement:

"District Attorney: Sir, there's been a lot of questions directed to you about the demeanor of this defendant during the course of this interview, whether she's in shock and grieving and all of that, correct?

Officer: Yes, sir.

District Attorney: Sir, is the best evidence of her demeanor the actual videos themselves?

Officer: Yes, sir." (RR.Vol.3, p.43, Lines 11-18)

The transcript indicates that Cartwright's demeanor during interrogation was mentioned exactly eleven times during the hearing. (RR. Vol. 3).

The District Attorney referred to the interrogation videos as the best source of evidence for other disputed issues as well: (RR. Vol.3, p.45 – Video will show Cartwright not threatened during questioning);(RR.Vol.3, p.47 – Video will show Cartwright was not "crazy" because she physically demonstrated her physical abuse to the child); (RR. Vol.3, p. 47 – video shows Cartwright was not emotional during questioning).

Evidence was presented through the testifying officers about Appellant's own statements concerning her then-existing mental state, and whether or not she understood her

rights, thereby placing Appellant's own credibility in direct issue. (RR Vol.3, p. 20-21 - Cartwright advised detectives that she had mental issues); (RR Vol.3, p. 22 – Cartwright made the statement that people said she was crazy); (RR Vol.3, p. 22 - Detective took [Cartwright's statement about being crazy] "with a grain of salt"); (RR Vol.3, p. 24 – Cartwright contended she had no knowledge of any injuries that the baby had); (RR. Vol.3, p.36 – disagreement about whether Cartwright asked numerous times for clarification as to what her rights were); (RR. Vol.3, p.36 – disagreement about whether Cartwright asked for clarification on her right to remain silent); (RR. Vol.3, p.43,p.64 – Cartwright responded that she did understand her rights); (RR.Vol.3, p.47 – Detectives believed Cartwright trying to minimize her role when she said she was crazy).

A review of the transcript shows that the key disagreement during the suppression hearing was whether Appellant's behavior, as shown in the videos, demonstrates an intelligent and rational mental state, or not. Those competing claims could only have been resolved by Judge Dickerson actually watching the admitted videotapes and making findings as to credibility. **The record is silent as to whether Judge Dickerson ever reviewed the videos.**

**B. Judge Dickerson Did Not Make a Ruling on Appellant's Motion and Did Not Issue Written Findings of Fact and Conclusions of Law.**

The suppression hearing was recessed by agreement of the parties for the presentation of additional evidence at a later time. (RR. Vol.3, p. 74). Defense counsel wanted to have Appellant psychologically evaluated (RR. Vol.3, p. 5, 77-78). The suppression hearing was never resumed in front of Judge Dickerson and Judge Dickerson did not issue a ruling or findings of

fact. (RR. Vol.4, p.143, 145 – "We all thought another judge was going to rule on it, but it just never happened").

**C. Judge Mitchell Relied Solely on Reading the July 8th Transcript Before Denying Appellants Motion Raising Due Process Involuntariness Claims.**

Defendant's jury trial commenced on January 13, 2014, approximately six months after the original suppression hearing. Trial was presided over by the Hon. Charles Mitchell, 273rd District Court. (RR. Vols.4-10). During trial, but outside the jury's presence of the jury, the suppression hearing was resumed. (Vol. 5., p.193-207).

> "MR. FLORENCE: We are, Your Honor. And the purpose of this -- this is basically a continuation of a hearing. On July 13th -- July 8th, I'm sorry, 2013, we started a motion to suppress hearing where witnesses' testimony was taken, which you have the reporter's record for that, as well as the video confessions, I'll call them, were tendered to the Court for the Court to review. That particular judge never made a ruling on it. So by agreement on -- you know, the Court on record yesterday, we agreed you could look at that – the reporter's record from that prior hearing, where I believe Ms. Faulkner testified as well as Mr. Windham about the voluntariness of the statements. And then at the beginning of the tape, you can see where the admonishments, the 38.22 admonishments and whatnot were given to the Defendant. So I was just going to start at the beginning of the first video, and then what happens the second day, she had asked officers back and they re-admonished her and took another statement. And so I was just going to play both of those, and I believe that would satisfy the requirements of the hearing for voluntariness.
>
> THE COURT: You're not going to play the whole thing, are you? Just the --
>
> MR. FLORENCE: No, Your Honor. I'm just going to play the admonishments.
>
> THE COURT: Just the warnings?
>
> MR. VELASQUEZ: The whole thing would be about seven and a half hours.
> (RR Vol. 5, p. 193-194).

The Court declined an offer to take new testimony concerning the voluntariness of Appellant's statements:

> MR. FLORENCE: And I know that Detective Faulkner was one of the witnesses there. I

14

can go through some more of that about the voluntariness unless after reading the records, you've already done so.

COURT: I don't think you need to be repetitive about that. I would – I would like to just see the admonishments or the warnings that were given.
(RR Vol. 5, p. 195-196).

None of the witnesses who testified on July 8, 2013 were recalled to testify anew. (*Id.*, p.193-207). The only new evidence taken concerned admitting the signed *Miranda* warning cards (*Id.*, p.200) and who was present in the interrogation room (*Id.* 197-198). Judge Mitchell ruled that the videotaped statements were voluntary and admissible:

> "MR. FLORENCE: Yes, Your Honor. I didn't pass the witness because based on your ruling in this hearing, what I would intend to do tomorrow with the jury was start with the videotape statement. So once you rule upon this motion, if it's excluded, I need to figure out what I'm going to do between now and tomorrow. And if you rule it's admissible, then tomorrow morning we show up, I plan to start off with this for the jury.
>
> THE COURT: Okay. Out of the presence of the jury, I rule it's admissible.
>
> MR. FLORENCE: Your Honor, do you specifically rule --
>
> THE COURT: I find it to be voluntary. But -- and I'll make the necessary findings of fact and conclusions of law for the appellate record."
> (*Id.*, p.204 -205).

However, findings of fact were not filed prior to the videotapes being played for the jury. From the available record it appears that the first findings actually signed by the Court are the *Nunc Pro Tunc* findings signed on March 2, 2015, after Appellant's first motion to this Court.

**D. The Trial Court Committed *Garcia* Error and Neither Exception to *Garcia's* Remedy of a *de novo* Suppression Hearing is Applicable. Therefore, a New Hearing is Required.**

In Appellant's case Judge #1 presided over the suppression hearing. Testimony and evidence was admitted that necessitated that an evaluation of credibility and demeanor be

15

made in order to rule on Appellant's involuntariness challenge.  However, no ruling denying the motion was entered and no written findings of fact and conclusions of law were placed into the record.  Six months later Judge #2 reads the transcript from that hearing and relies on it exclusively to deny Appellant's motion (although some new evidence was taken on the separate issue of whether Appellant was properly *Mirandized*).  This clearly is *Garcia* error and *Garcia's* remedy is a new suppression hearing.

Neither recognized exception to *Garcia* applies.  Here, unlike *Bass* the second Judge did not base his ruling on a previous judge's ruling and findings of fact.  Here, unlike *Velez*, the second Judge did not base his ruling on a previous judge's ruling and the first judge *is still available* and still serving on the bench.

**E. Under Current Precedent, the Rules of Procedural Default and Invited Error are Not Relevant to a *Garcia* Error Analysis.**

*See* Chapters I-V *supra*.


## VI. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellant, Shakeitha Cartwright,  prays for an order abating this appeal, an order directing the trial court to hold *de novo* a hearing under Art. 38.22, § 6, Tex. Code Crim. Proc., and following said hearing, to  prepare and file findings of fact and conclusions of law as to the voluntariness of Appellant's statements to law enforcement, and to file in the Appellate Court a supplemental clerk's record containing those findings, and for an order staying the briefing schedule until the foregoing is accomplished.

Respectfully,

Seth T. Johnson, #24082212
928 N University Dr.
Nacogdoches, TX 75961
(P) 936-205-6775
(F) 936-715-3022
johnsondefenselaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief, was delivered via electronic filing service to: Kenneth Florence, Shelby County District Attorney, on October 15, 2015.

Seth T. Johnson, #24082212