Affirmed and Opinion filed November 13, 2003









Affirmed and Opinion filed November 13, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01228-CR

____________

 

VICKIE Y. DRAKE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the Second
25th District Court

Colorado County, Texas

Trial Court Cause No. CRO2-111

 



 

O P I N I O N

A jury found appellant, Vickie Y. Drake, guilty of the
offense of arson of a building.  See
Tex. Pen. Code
Ann. ' 28.02(a)(2)
(Vernon 2003).  The trial court sentenced
her to fifteen years= imprisonment in the Texas
Department of Criminal Justice, Institutional Division.  Appellant=s motion for a new trial was
overruled by operation of law.  Appellant
asserts four points of error on appeal. 
We affirm.








                          FACTUAL AND PROCEDURAL BACKGROUND

On the morning of June 10, 2002, the owner of the Of the Day
Café (ACafé@), a restaurant in Columbus,
Texas, arrived at the Café and discovered the back door
was charred.  She noticed an odd odor, as
though something had burned.  The previous
evening, June 9, 2002, at about 11:30 p.m., a Columbus police officer was
dispatched to a lumberyard and found appellant hiding with a backpack
containing appellant=s driver=s license, a torch, and a
propane-type cannister.  Appellant was
arrested and initially charged with attempted burglary of the Café, located about 1,500 feet from where appellant was found.

On June 11, 2002, Columbus Police Chief Robert Connor
visited appellant in the library of the Colorado County Jail.  Connor told appellant a scent lineup had
positively identified her as being at the Café.  Connor asked appellant for a statement, but
she wanted to negotiate about eliminating some of the charges against her.  He told appellant any negotiations would have
to be with the county attorney.  Connor
did not read appellant her legal rights at that time.  On June 13, 2002, appellant was brought to
Connor=s office, but she was unwilling
to make a statement.  On June 14, 2002,
Connor again met with appellant in the jail library, and appellant provided a
written statement confessing she had attempted to open the back door of the Café with the torch found in her backpack and had expected to
get money from the building.  Appellant
was then charged with arson. 

Prior to trial, appellant filed motions in limine to
prohibit reference to any prior convictions or extraneous offenses.  The trial court granted the motions.








Appellant also moved to suppress her statement, claiming it
was involuntary.  At the suppression
hearing, appellant testified Connor promised her any statements she made would
not be used against her, he would not file additional charges, and matters
would be easier for her if she provided information.  She testified that, in the past, based on
promises Connor made, she had provided information to him in exchange for
favorable treatment.  Appellant further
asserted she had signed similar statements in the past when dealing with
Connor, and therefore her expectation was that he would honor his alleged
promise.

Connor testified that on June
14, he showed the statement form to appellant, had her fill in her personal
information, and then read the Miranda warnings to her.  She initialed each right, wrote her
statement, and signed the form.  Connor
stated that appellant did not ask to speak with her lawyer prior to making any
statements.  

Connor denied making any
promises to appellant, attempting to coerce her, or making a deal to influence
her.  He testified he told appellant any
negotiations would have to be with the county attorney.  He stated that he did not tell appellant the
county attorney would go easy on her if she confessed or that confessing would
be in her best interest.  Connor
acknowledged that in the past the police department had paid appellant for
information, but any favorable treatment she received on offenses she had
allegedly committed was negotiated by the former county attorney.

The trial court suppressed any
oral statements made by appellant on June 11, 2002, before she received the
Miranda warnings, but denied appellant=s motion to suppress the June
14, 2002 written statement.

The guilt-innocence phase was
tried to a jury.  The State introduced
appellant=s statement though Police Chief
Connor.  In addition to testimony from
the Café owner and the arresting officer, the State called the
investigating officer who testified he observed burn marks on the door behind
the handle, under the door latch, and on the door frame.  On cross-examination, the officer testified
the door was metal, with wood on the inside, but when closed, the door would
appear to be a steel door.  The building
was also steel.








The State also called Columbus
City Manager David Stahle to testify as an expert on arson and fire
investigation.  Stahle=s credentials included 20 years
as a state certified fire/arson investigator, eight years Aof Fire Marshall Agency,@ and experience as a
firefighter and arson instructor. 
Appellant objected to Stahle=s testifying as an expert on
the grounds that the issue of whether or not a fire was started was within the
province of the jury.  The court
overruled the objection.  Based on his
training and background, and inspection and analysis of the door, Stahle
testified that a fire had started.

As her only witness, appellant
called a private investigator who videotaped the door
and the building.  The videotape showed
magnets attached to the building, indicating it was metal.  The videotape also showed the scorching was
localized in the area around the latch.

After the jurors retired for
deliberations, they sent a note requesting Stahle=s testimony.  The judge sent a written reply informing the
jury that testimony could be read back to the jury only if the jury disagreed
about a witness=s statement.  The jury returned to the courtroom, and the
court reporter read Stahle=s testimony about whether or
not a fire was actually started.

The jury subsequently returned
a guilty verdict, and the trial court assessed punishment at fifteen years= imprisonment.

DISCUSSION

Points of Error One and Four:
Admissibility of Appellant=s Written Statement

In point of error one,
appellant argues the appeal should be abated and the cause remanded because the
trial court did not enter written findings of fact and conclusions of law in
support of its decision to admit appellant=s written statement.  In point of error four, appellant argues the
trial court erred in denying her motion to suppress her statement.








Whether
to abate.  The Texas Code of Criminal Procedure requires
a trial court to enter a written order stating its conclusion that a defendant=s statement is voluntary and
setting forth the specific findings on which its conclusion is based.  Tex. Code Crim. Proc. Ann. art.
38.22, '
6 (Vernon 1979).  When a trial
court has not made findings of fact and conclusions of law after determining a
defendant=s custodial statement was
voluntary, the appellate court must abate the appeal and remand the case to the
trial court with instructions to reduce findings and conclusions on the disputed
issues to writing.  Wicker
v. State, 740 S.W.2d 779, 784 (Tex. Crim. App. 1987).

Article 38.22, section 6
requires a trial court to file findings of fact and conclusions of law
regarding the voluntariness of a confession regardless of whether or not the defendant
objects to the absence of such filing.  Wicker, 740 S.W.2d at 783; Bonham v. State, 644
S.W.2d 5, 8 (Tex. Crim. App. 1983). 
But see Garcia v. State, 15 S.W.3d 533, 537B38 (Tex. Crim. App. 2000)
(Keasler, J., dissenting and questioning the soundness of the Wicker
rule); State v. Terrazas, 4 S.W.3d 720, 728 (Tex. Crim. App. 1999)
(stating A[t]he >right= to findings and conclusions is
a statutory >right= which is forfeited by a party=s failure to insist upon its
implementation,@ and therefore declining to
remand sua sponte).

Nevertheless, appellate courts
have held a trial court satisfies article 38.22 when it dictates its findings
and conclusions to the court reporter, and those findings are later transcribed
and made part of the appellate record.  See,
e.g., Murphy v. State, 112 S.W.3d 592, 601B02 (Tex. Crim. App. 2003); Parr
v. State, 658 S.W.2d 620, 623 (Tex. Crim. App. 1983); Andrade v. State,
6 S.W.3d 584, 592 (Tex. App.CHouston [14th  Dist.] 1999, pet. ref=d); Blount v. State, 64
S.W.3d 451, 457 (Tex. App.CTexarkana 2001, no pet.); Lee
v. State, 964 S.W.2d 3, 11B12 (Tex. App.CHouston [1st Dist.] 1997, pet.
ref=d); Perkins v. State,
779 S.W.2d 918, 925 (Tex. App.CDallas 1989, no pet.). 








In Andrade, the
defendant argued his signed confession was involuntary because he believed the
statement he was signing was a form to release his dog from the pound.  6 S.W.3d at 587.  He claimed, because of his poor eyesight, he
did not realize the form contained his confession.  Id. 
The trial court found the defendant A>was given his warnings, did
understand those warnings, that he did give up those rights and make a
statement, and that it was voluntary and intelligently made.=@  Id. at 592.  These findings were dictated into the
record.  Id.  On appeal, the defendant claimed the trial
court=s findings were not specific
enough to allow him to show error.  Id. at 592. 
This court, however, concluded the trial court impliedly rejected the
defendant=s testimony that he did not
read the confession before signing it, and further that the trial court
complied with article 38.22, section 6, by dictating the findings into the
record.  Id.

In the instant case, appellant
claimed Connor promised her any statements she made would not be used against
her, he would not file additional charges, and matters would be easier for her
if she provided information.  Connor
denied making any promises to appellant or making a deal to influence her to
provide any statements, written or oral. 
Connor testified he did not attempt to coerce appellant, and told
appellant that any negotiations would have to be made with the county
attorney.  He stated that he did not tell
appellant that the county attorney would be lenient with her if she confessed
or that it would be in her best interest. 
Connor acknowledged the police department had previously paid appellant
for information, but only the former county attorney negotiated any favorable
treatment she received on offenses she had allegedly committed.

After listening to the disputed
testimony, the trial court denied appellant=s motion to suppress her June
14, 2002 written statement.  The court
stated: AWhat the defendant may [have]
thought, without any promises is not relevant. 
Past history doesn=t make
any difference.  This time is what=s before the court.  When it comes down to believing Ms. Drake and
Chief Connor, the court will give more credence to Chief Connor=s testimony than hers.@  The trial court=s statements were later
transcribed and made part of the record.

One purpose of requiring the
trial court to enter findings and conclusions is to provide the parties and the
reviewing court with a basis on which to assess the trial court=s ruling.  See Bonham, 644
S.W.2d at 8.  The conclusion
regarding voluntariness must appear from the record with unmistakable
clarity.  Id. at
7.








In the present case, the trial
court found Connor was more credible than appellant and no promises had been
made.  As in Andrade, in which
this court concluded the trial court impliedly rejected appellant=s version of the facts, we
conclude that, in finding Connor to be more credible, the trial court
implicitly rejected appellant=s testimony and found that
Connor made no assurances to appellant and did not attempt to negotiate with
her.  We hold the trial court
sufficiently satisfied Article 38.22, section six.

We overrule appellant=s point of error one.

Voluntariness
of the Statement.  In point of error
four, appellant contends the trial court erred in denying her motion to
suppress.  She contends her statement was
involuntary because it was obtained by means of improper inducement.

We review the trial court=s decision on a motion to
suppress under an abuse of discretion standard. 
See Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996).  When there is
conflicting evidence about whether a confession was voluntary, the trial court
is the sole judge of facts at the suppression hearing, and an appellate court
may not disturb any finding supported by the evidence.  Dunn v. State, 721
S.W.2d 325, 336 (Tex. Crim. App. 1986). 
Whether a confession is voluntary is a mixed question of law and
fact.  Garcia, 15
S.W.3d at 535.  Appellate courts
should give almost absolute deference to trial court determinations of
historical fact supported by the record, especially when those findings are
based on an evaluation of credibility and demeanor.  Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). 
Appellate courts should afford the same amount of deference to trial
court rulings on mixed questions of law and fact when the resolution of those
ultimate issues turns on an evaluation of credibility and demeanor.  Id. 
However, an appellate court may review de novo mixed questions of
law and fact that do not fit within that category.  Id.

In the instant case, the trial
court=s ruling at the suppression
hearing was based on its evaluation of the credibility and demeanor of appellant
and Connor.  Therefore, we afford almost
complete deference to the trial court=s ruling.








Article 38.21 requires the
statement to have been Afreely and voluntarily made
without compulsion or persuasion.@  Tex. Code Crim. Proc. Ann. art.
38.21  (Vernon
1979).  In determining the question of
voluntariness, a court should consider the totality of circumstances under
which the statement was obtained.  Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App.
1997).  The ultimate question is
whether the appellant=s will was overborne.  Id. at 856.

As discussed above, the trial court
credited Connor=s version of the events
surrounding appellant=s statement.  Connor testified he never told appellant
matters would be better for her if she confessed or the city attorney would go
easy on her.  Appellant nevertheless
refers to the following parts of Connor=s testimony as evidence her
statement was the product of improper inducement: (1) appellant previously gave
information to Connor and had received favorable treatment; (2) appellant  tried to
negotiate a deal during Connor=s visit to her on June 11; and
(3) Connor was unsuccessful in obtaining a statement on June 13.  Finally, she quotes Connor=s testimony:

I went out to talk to her to negotiate
with her and tell her about this statement. 
I went to talk with her and get everything together so I could go back
to the county attorney and give a statement, and I went and talked to her, and
when I talked to Vickie, I told her everything that was lined up and that she
could help herself.  At that particular
time, she gave a statement and I went to the county attorney with it.[1]

 








Before a promise will render a
confession inadmissible, the promise must be shown to have induced the
confession.  Muniz
v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993).  In order to induce a confession, the promise
must be (1) of some benefit to the defendant, (2) positive, (3) made or
sanctioned by someone in authority, and (4) of such an influential nature that
it would likely influence a defendant to speak untruthfully.  See Creager, 952
S.W.2d at 856.  An improper
inducement must be of an exceptional character before it will invalidate an
otherwise voluntary confession.  Espinosa
v. State, 899 S.W.2d 359, 364 (Tex. App.CHouston [14th Dist] 1995), pet.
ref=d).  General, non-specific offers to help a
defendant are unlikely to elicit a false statement by a suspect, and will not
render a confession invalid.  Id.
(citing Dykes v. State, 657 S.W.2d 796, 797 (Tex. Crim. App.
1983)).  Furthermore, general statements
about how a confession might result in more lenient treatment will not
invalidate the confession.  Id.

In Espinosa, the
defendant contended his statement was involuntary because it was induced by
promises of leniency by the police.  Id. at 362. 
The officers allegedly urged him to tell them what happened, assuring
the defendant A[e]verything will be better for
you.@  Id. 
At least one officer allegedly promised the defendant would Aget less time.@  Id. at 363.  Although acknowledging that the promise of
less time might have influenced the appellant to make a statement, this court
dismissed the notion that the inducement probably caused him to confess
falsely.  Id. at
364.  Just as the officers= inducements did not render
Espinosa=s confession involuntary,
Conner=s general, non-specific
statement appellant Acould help herself@ did not render appellant=s statement involuntary.[2]

We overrule appellant=s point of error four.

Point of Error Two: Denial of
the Mistrial Motion








In point of error two,
appellant contends the trial court erred in denying her motion for a mistrial
after Connor alluded to extraneous offenses in violation of a motion in
limine.  The testimony at issue
occurred during defense counsel=s attempt to establish that an
attempted burglary charge had escalated into arson without any intervening
justification.  When defense counsel
questioned Connor whether there were any allegations that appellant Ahad attacked the structure or
done anything additionally to it between June 11 and the 14th,@ Connor answered, ANo.  We were working so many burglaries on Ms.
Drake.  The only one that I - - .@  The trial court sustained defense counsel=s objection, instructed the
jury to disregard the answer, but denied appellant=s motion for a mistrial.

We review the trial court=s denial of the motion for a
mistrial under an abuse of discretion standard. 
Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim.
App. 1999).  When objectionable
testimony is elicited, inadvertently or deliberately, an appellate court
presumes the jury will follow instructions to disregard the evidence.   See id. (quoting
Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)).  A trial court=s instruction to disregard can
render harmless testimony referring to extraneous offenses Aunless it appears the evidence
was so clearly calculated to inflame the minds of the jury or is of such
damning character as to suggest it would be impossible to remove the harmful
impression from the jury=s mind.@  Kemp v. State, 846 S.W.2d
289, 308 (Tex. Crim. App. 1992). 
A court should review the particular facts of the case in determining
whether a given error requires a mistrial. 
See Ladd, 3 S.W.3d at 567.                                                   








In cases comparable to the
present case, courts have held a curative instruction sufficient to render
objectionable testimony harmless.  See,
e.g., Kemp, 846 S.W.2d at 308 (holding State=s witness=s reference to defendant=s prior incarceration rendered
harmless by curative instruction); Gardner, 730 S.W.2d at 696B97 (holding witness=s testimony during State=s cross-examination that, when
defendant was in the penitentiary, he had stomach problems attributable to drug
withdrawal was not so inflammatory as to require a mistrial); Barney v.
State, 698 S.W.2d 114, 124B25 (Tex. Crim. App. 1985)
(holding State=s witness=s answer that victim did not
like defendant because Ahe was an ex-con@ was improper reference to
extraneous offense, but cured by jury instruction); Campos v. State, 589
S.W.2d 424, 427B28 (Tex. Crim. App. 1979)
(holding witness=s testimony, during State=s cross-examination, that
defendant was arrested and jailed on an extraneous offense was cured by jury
instruction); Bledsoe v. State, 21 S.W.3d 615, 624 (Tex. App.CTyler 2000, no pet.) (holding detective=s testimony, during questioning
by State, that detective served warrant on defendant at county jail was cured
by instruction when State did not solicit response or emphasize the testimony
to the jury, and detective did not elaborate on reasons for the incarceration).

In the present case, Connor=s testimony was not solicited
by the State, but was a nonresponsive answer to defense counsel=s cross-examination.  The trial court immediately instructed the
jury to disregard the statement, and there was no further mention of the
extraneous offenses.  As in the preceding
cases, Connor=s testimony was not so
inflammatory the jurors could not follow the court=s instructions to disregard
it.  The trial court did not abuse its
discretion in denying appellant=s motion for mistrial.

We overrule appellant=s point of error two.

Point of Error Three:
Admissibility of Expert Testimony

In point of error three,
appellant contends the trial court Aerred@ by admitting the testimony of
David Stahle, the Columbus City Manager, who had twenty years experience as a
state certified fire/arson investigator. 
When the State called Stahle, defense counsel objected that Athe issue is whether a fire was
started and that should be within the province of the Jury.@  Defense counsel expanded:

It is under Rule 7.04 [sic], I
believe it is.  There is nothing to bar
testimony that embraces or addresses the main issue, but the expert cannot
supplant the jury=s role.  They are the final decision maker and I don=t think this particular case
requires an expert.  I think the Jury is
equally qualified to look at the photos and see what happened and make a
decision as to whether or not in their opinion that constitutes starting a
fire.  Essentially it is improper
bolstering and extraneous on the State=s part.

 

The trial court overruled the
objection and subsequently permitted appellant a running objection to Stahle=s testimony.








After summarizing his
experience and training in arson and fire investigation, Stahle then testified
he had inspected the door and door frame, had viewed photographs taken soon
after the offense was reported, and had taken photographs of his own.  Based on his observations, Stahle opined
there Awas evidence of direct flame
impingements upon the door and siding of the jamb localized around the lock
area.@  He testified the door was a hollow metal-clad
door.  According the Stahle, the paint on
the door, the wood frame, and the framing of the building were capable of
catching on fire.  Stahle was able to
determine a Afire had started.@  He based his determination on the following: AThere was charring of
wood.  There was a reflection of the wood
mass, a common cause of a chemical reaction that results in fire.  There was deep charring and it had burned for
some period of time.@  Stahle further explained that propane burns
at 2,810 degrees, Acertainly sufficient to start a
fire in any flammable or combustible material.@  Using a photograph of the edge of the door
and the door jamb, Stahle pointed out an area that was scorched and burned, as
well as an area of deep char.  He
concluded by explaining a Arule of thumb@ that there is an inch of char
for every 45 minutes of burning, and he observed about a half-inch of char.

We review a trial court=s ruling on the admissibility
of evidence under an abuse‑of‑discretion standard.  Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 2000) (citing Prystash v. State, 3 S.W.3d 522, 527
(Tex. Crim. App. 1999)).  Accordingly, we
must uphold the trial court=s ruling if it was within the
zone of reasonable disagreement.  Id.  (citing Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.1990)).  In addition, we must review the trial court=s ruling in light of what was
before the trial court at the time the trial court ruled.  Id. 
(citing Hoyos v. State, 982 S.W.2d 419,
422 (Tex. Crim. App. 1998); Hardesty v. State, 667 S.W.2d 130, 133 n. 6
(Tex. Crim. App. 1984)).

ATestimony in the form of an
opinion or inference otherwise admissible is not objectionable because it
embraces an ultimate issue to be decided by the trier of fact.@   Tex.
R. Evid. 704. Texas Rule of Evidence 702 provides:  AIf scientific, technical, or
other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the
form of an opinion or otherwise.@  Tex.
R. Evid. 702.

As the court of criminal
appeals has explained, Rule 702 contains two themes:








First, the jury must not be qualified
to intelligently and to the best possible degree determine the particular issue
without benefit of the expert witness= [sic] specialized knowledge.  Second, the clear meaning of the rule must be
observed. . . .  The use of expert
testimony must be limited to situations in which the expert=s knowledge and experience on a
relevant issue are beyond that of an average juror.  The decision to be made remains with the
jury, but the testimonial expertise is allowed to enable the trier of fact to
better comprehend the full significance of the evidence.   The evidence at issue is admissible if it
encompasses or Aembraces@ an ultimate fact;  it may not decide that fact for the
jury.  

 

Duckett
v. State,
797 S.W.2d 906, 914 (Tex. Crim. App. 1990) (citations omitted), disapproved
on other grounds in Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App.
1993).  Additionally, AWhen the evidence is of such
content as to be classified as >specialized= within a particular
discipline, a presumption may be drawn that the evidence is not of common
experience.@  Id. at 917.








In the present case, the State
had to prove appellant Astart[ed] a fire, regardless of
whether the fire continue[d] after ignition.@  Tex. Pen. Code Ann. ' 28.02(a)(2)
(Vernon 2003).  The evidence established
the Café door and door frame were steel, with wood inside the door
and in the door frame.  Although the
photographs showed blackened or charred areas on the door and door frame,
Stahle provided evidence from which the jury could translate the amount of char
on the wood jamb into the length of time the wood burned (i.e., one-half
of 45 minutes).  Although it is possible
the jury would have been capable of deciding whether this amount of time meant
appellant started a fire, 
Stahle had specialized knowledge on the issue which was
helpful.  See John F. Sutton, Jr.
& Cathleen C. Herasimchuk, Article VII: 
Opinions and Expert Testimony, 30 Hous.
L. Rev. 797, 817 (1993) (Texas Rules of Evidence Handbook) (citing Duckett,
797 S.W.2d at 917).[3]  We conclude the trial court did not abuse its
discretion in admitting Stahle=s testimony.

We overrule point of error
three.

We affirm the judgment of the
trial court.

 

 

 

/s/      John
S. Anderson

Justice

 

 

 

 

Judgment rendered and Opinion
filed November 13, 2003.

Panel consists of Chief Justice
Brister and Justices Anderson and Seymore.

Publish C Tex. R. App. P.
47.2(b).











[1]  When asked
about using the word Anegotiate,@ Connor clarified, AWell,
not negotiate.  I went - -  I used the word >negotiate.=  I went out to interview her.@





[2]  One difference
between Espinosa and the present case is the fact appellant had
previously been paid for information and had received favorable treatment, with
the county attorney negotiating the latter. 
The trial court, however, concluded that, absent any promises by Connor
in the present situation, past history was not relevant.  Under the totality of the circumstances, we conclude
appellant=s past experience does not raise Connor=s statement appellant Acould
help herself,@ to the level of an inducement that would render the
statement involuntary.

 

We also conclude the fact appellant did
not provide a statement until Connor=s third
visit is not a circumstance tending to render the statement involuntary.  Appellant=s
refusal to provide a statement on the first and second visits indicates she was
capable of exercising her will to refuse to give a statement.





[3]  In addition to
Stahle=s testimony on an ultimate issue being admissible
under Rule 704, his testimony was also necessary to bridge a logical gap in the
proof of the offense.  Here, there was no
testimony anyone called the fire department, and there were no eyewitnesses to
testify they saw flames coming from the Café. 
Inferentially, there was no fire. 
However, through 
Stahle=s testimony, and only through his testimony, was the
State able to offer evidence regarding a critical element of arson: that the
defendant started a fire.