

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00156-CR
### NO. 02-12-00157-CR

DEMARCUS MCCOWAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1] AND ORDER OF ABATEMENT

----------

Appellant Demarcus McCowan appeals his conviction for two counts of aggravated robbery. We overrule issues one and three, but we abate issue two for the trial court to enter the required findings of fact and conclusions of law.

---

[1]*See* Tex. R. App. P. 47.4.

## I. BACKGROUND

Because Appellant does not challenge the sufficiency of the evidence to support his convictions, a detailed recitation of the facts is not necessary. *See, e.g.*, *Busby v. State*, 990 S.W.2d 263, 266 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1081 (2000). In brief, Appellant and his girlfriend, Jade Beard, lived together in a motel room. On July 14, 2008, Appellant and Beard were parking Beard's car at the motel when Kristopher Green, whom they did not know, approached them and offered Appellant money to drive him to a friend's house. Appellant agreed, Beard got out of her car, and Appellant and Green left together in Beard's car. Over the next hour, Appellant and Green shot a gun from Beard's car, robbed several people at gunpoint, and forced a man to withdraw money from an automatic teller machine.

Appellant was charged by indictment with two counts of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2011). A jury found Appellant guilty of both, and the trial court sentenced him to concurrent 35-year sentences. Appellant filed notices of appeal and now argues that the trial court abused its discretion by overruling his motions to suppress and by overruling his objection to the State's improper question about extraneous offenses.

## II.  MOTION TO SUPPRESS

### A.  EVIDENCE DISCOVERED DURING SEARCH OF MOTEL ROOM

### 1.  Facts

Before trial, Appellant filed a motion to suppress evidence that police officers found in his motel room after he was arrested.  The trial court conducted a hearing and denied the motion.  At the pretrial hearing, Detective Lowell Johnson testified that he went to Appellant's motel room after Appellant was arrested to ask Beard if she would come to the police station and give a statement.  Johnson could not remember specifically what happened once he arrived at the motel, but he was "sure that myself and my partner went to the door, knocked, and talked to Ms. Beard . . . and asked her if she wanted to come talk to [the investigating detective] and also while we were there if I could come in and look around her room."[2]  He assumed this because that was his usual procedure.

Johnson stated Beard allowed him to come into the room, but Beard testified that she did not invite the officers to enter.  Beard asserted Johnson entered "automatically . . . and then . . . told me that I needed to leave the room."  Johnson stated he searched the room after Beard allowed him to enter to ensure his safety:  "I knew there had been an arrest made.  I didn't know who this woman was, so we look[ed] around to make sure that we're safe."  Johnson

_____
[2]At the time of Johnson's testimony, almost four years had passed from the time of the offenses.

3

admitted no exigent circumstances were present to justify a warrantless search and that he could not remember if he had Beard's consent to search the room. But in Beard's subsequent statement to police, she admitted that she "cooperated with detectives and allowed them to search my hotel room." During Johnson's search, he found a large-caliber ammunition magazine and a box of .45-caliber ammunition. The ammunition was the same caliber as the gun that was found in Beard's car after Appellant's arrest.

## 2. Standard of Review

Under the United States Constitution, a search conducted without a warrant issued upon probable cause is presumed unreasonable unless the search falls within a specific exception to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973). One such exception is if the search is conducted pursuant to voluntary consent. *See id.*; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). The validity of consent is a question of fact to be determined from all the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), *cert. denied*, 510 U.S. 831 (1993). The United States Constitution requires the State to prove the validity of consent by a preponderance of the evidence while the Texas Constitution requires clear-and-convincing evidence. *See Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).

4

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *See Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We must afford extreme deference to a trial court's express or implied determination of facts—including findings that involve credibility determinations— but we review de novo the court's application of the law to the facts as found by the trial court. *See id.* In short, the trial court is the sole judge of the witnesses' credibility, even when consent to search is disputed. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App.), *cert. denied*, 537 U.S. 1051 (2002). The trial court did not make explicit findings of fact; thus, we review the evidence in the light most favorable to the trial court's ruling. *See id.*

### 3. Application

Even though Appellant had a reasonable right of privacy in the contents of the motel room, Beard had authority to consent to the entry and search. The consent of a person who possesses common authority over certain premises is valid against the absent, nonconsenting person with whom that authority is shared. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990); *United States v. Matlock*, 415 U.S. 164, 170, 94 S. Ct. 988, 993 (1974). Appellant and Beard both lived in the motel room, and Beard kept her clothes there. This "mutual use of the property" permitted Beard to consent to the entry and search even in Appellant's absence. *Matlock*, 415 U.S. at 171 n.7, 94 S. Ct. at 993 n.7; *see Reyes v. State*, No. 2-04-366-CR, 2006 WL 20397, at *5 (Tex.

5

App.—Fort Worth Jan. 5, 2006, pet. ref'd) (mem. op., not designated for publication).

Johnson's testimony supports the trial court's implied finding that Beard consented to the entry, which we will not second guess. Even though Beard testified that she did not consent to the entry, this was a credibility determination that the trial court was uniquely positioned to make. The evidence also supports the trial court's implied finding that Beard consented to the search. Johnson could not remember if Beard consented to the search, and Beard testified she did not consent to the search. However, Beard's subsequent written statement to police showed that she consented to the search. Although Beard testified that the written statement had been altered and was not what she told the police officers that day, the trial court was able to determine her credibility and could have found that Beard consented to the search based on such assertion in her written statement. Because the preponderance of the evidence and the clear and convincing evidence support the trial court's credibility determinations that Beard consented to the entry and the search, we conclude the trial court did not abuse its discretion in denying Appellant's motion to suppress the evidence found in the motel room.[3] We overrule issue one.

---

[3]Even if this evidence was erroneously admitted, Appellant was not harmed by its admission. *See* Tex. R. App. P. 44.2(b). The evidence found in the motel room was not the only evidence introduced at trial connecting Appellant to the gun found in Beard's car.

## B. CONFESSION

### 1. Facts

Appellant asserts that the trial court abused its discretion by denying his motion to suppress his confession. At the hearing on Appellant's motion to suppress, the investigating detective, James Weisinger, testified that he spoke with Appellant after his arrest. Weisinger stated he read Appellant the required warnings from a green warning card he routinely keeps in his desk. Appellant told Weisinger that he understood the warnings and that he wished to waive his right to remain silent and speak to Weisinger. After their conversation, Weisinger wrote down Appellant's inculpatory statement, at Appellant's request and direction, and Appellant initialed the written statement in two places. The written statement included a form portion at the top that also recited the warnings Weisinger previously read to Appellant. Weisinger read the statement back to Appellant, including the preprinted warnings, and had Appellant sign the written statement on both pages.

Appellant denied that Weisinger read the required warnings before their conversation or that Weisinger read the preprinted warnings on his written statement. Indeed, Appellant denied ever giving a statement to Weisinger. Appellant remembered signing something when he was originally processed at the jail and admitted the signature of the first page of the written statement was his, but he did not believe the signature on the second page was in his handwriting. The trial court denied the motion to suppress the confession.

## 2. Findings of Fact and Conclusions of Law

Appellant argues that the admission of his confession without the trial court's compliance with the mandatory requirements of article 38.22, section 6 of the code of criminal procedure was error.  *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 2005).  The State admits that the trial court did not enter the required order.  The requirements of article 38.22, section 6 are mandatory.  *See Wicker v. State*, 740 S.W.2d 779, 783 (Tex. Crim. App. 1987), *cert. denied*, 485 U.S. 938 (1988).  In the absence of such written findings and conclusions, we are unable to consider whether Appellant's confession was voluntary by a review of the trial court's application of the law to the facts.  *See Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004). The appropriate remedy in this situation is to abate this issue and direct the trial court to enter the requisite findings and conclusions.  *See Wicker*, 740 S.W.2d at 784.  Once these findings and conclusions are made, we will consider the voluntariness of Appellant's confession in light of the findings and conclusions.  *See Urias*, 155 S.W.3d at 142.

## III.  EXTRANEOUS-OFFENSE EVIDENCE

In his third issue, Appellant argues that the trial court erred in overruling his objection to the State's question that referred to Appellant's prior criminal record.[4]

---

[4]As set out below, Appellant did not object to the State's question but, instead, to the State's objection to the witness's answer and the trial court's ruling on that objection.

To the extent this issue relates to the admission of evidence at trial, we review the trial court's actions for an abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 2966 (2011); *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

## A. FACTS

Before trial, Appellant filed motions in limine requesting that the State not delve into extraneous offenses before gaining the trial court's permission. These motions were granted. During the guilt-innocence phase of trial, the State called Beard as a witness and asked her about her written statement inculpating Appellant and her assertion that Weisinger had added false information to her statement:

> [State:] You questioned [Weisinger about the written statement]?
>
> [Beard:] And I was asking him why he added certain things as far as in the parentheses, but no, I did not go any further.
>
> Q. And [Weisinger's] just saying, I don't care what I put in there. You sign that statement or you're not going anywhere. Is that what he said?
>
> A. He – I just felt interrogated [sic] to sign it. I just felt interrogated [sic] the whole time, from the time they – from the time that they came to the [motel] room til the time that I was in [the police station].
>
> Q. Okay. And were there like four or five officers standing – did they pull their guns on you?
>
> A. No. But I have not ever been through anything like this before, and it was a complete shock. It was just – I didn't understand it.

9

Q. What part of it was the complete shock?

A. The way they were just coming at me, the way they were just interrogating me. I had never been through anything –

Q. Your boyfriend had – as far as you knew had never been arrested for aggravated robbery before. Is that what you're saying?

A. I never knew him to be arrested period.

Q. Okay.

A. This was completely a shock to me. I mean, in the past, but for minor things. As far as anything – no, not to my knowledge.

[State]: You Honor, may we approach?

THE COURT: Yes.

(At the bench, on the record.)

[State]: My question was specific to aggravated robberies. She made the unsolicited statement that he had never been arrested for anything period, and that's not true.

[Appellant's attorney]: The District Attorney has called her as his own witness.

THE COURT: I'm not going to allow you to –

[State]: Well, obviously, Judge, I had no intention of opening that up.

THE COURT: You can object. I'll ask the jury to disregard it, her last response.

[State]: Okay.

(End of proceedings at the bench.)

10

[State]:  Your Honor, I'm going to object to the witness's last statement about [Appellant's] having never been arrested for anything period as a[n] unresponsive statement.

THE COURT:  Sustained.

[State]:  I'd ask you to instruct the jury to disregard that statement.

THE COURT:  Ladies and gentlemen of the jury, you'll disregard the witness's last statement.

[State]:  I'll pass the witness.

THE COURT:  Cross-examination?

[Appellant's attorney]:  Your Honor, before I do cross-examine this witness, I'd like to object to the objection made by the State.  I – I think the State has attempted to subvert the rulings of this Court, has attempted to –

. . . .

The District Attorney has called this witness as his own witness, and in – in doing that, he is not entitled to ask questions and then attempt to open the door for things he wishes to interject that have never been brought up in this courtroom, so I'd object to that.  And I'd ask that the jury be instructed to ignore all of this.

THE COURT:  . . . I will overrule that objection.

The line of questioning at issue here grew out of Beard's nonresponsive explanation to an explicit question by the State:

Q.  Okay.  And were there like four or five officers standing – did they pull their guns on you?

A.  No.  But I have never been through anything like this before, and it was a complete shock.  It was just – I didn't understand it.

11

Beard was attempting to explain why there was false information in her statement in addition to information damaging to Appellant. Her explanation was that she was in shock because she had never been in that position before—a position in which her boyfriend had been arrested for aggravated robbery and she was being questioned.

The State followed up with questions concerning what she had not been through before and why she was in shock. Thus, the question:

> Q. Your boyfriend had – as far as you knew had never been arrested for aggravated robbery before. Is that what you're saying?

This question was followed by a nonresponsive answer by Beard:

> A. I never knew him to be arrested period.

Appellant asserts on appeal that the question (which was not objected to) improperly inferred that Appellant had "in fact been arrested for aggravated robbery and had a criminal record." He maintains that by arguing that Beard's answer was nonresponsive, the State emphasized this inference and that the trial court's action in sustaining the objection gave "tacit approval" to the State's "injecting extraneous offenses."

## B. ANALYSIS

The State's objection that the answer was nonresponsive was well taken, and the trial court did not abuse its discretion by sustaining the objection and instructing the jury to disregard the answer. Appellant never objected to the State's question which he now argues gave rise to an inference of an extraneous

12

offense nor did he object to the State's objection when it was made. It was only after Beard was passed for cross-examination that Appellant objected. But even assuming that this issue was properly preserved and that the trial court's declination of Appellant's invitation to instruct the jury to "ignore all of this" was an abuse of discretion, Appellant has failed to show he was harmed.

The error Appellant urges is nonconstitutional; thus, it is reviewed under Rule 44.2(b): "any [nonconstitutional] error . . . that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

A review of the record reveals an abundance of evidence implicating Appellant in the aggravated robberies. Appellant drove Beard's car while Green assaulted one person and demanded money from six others at gunpoint within a

13

one-hour time span. Although Appellant could have driven away while Green was robbing these people, Appellant voluntarily stayed and assisted Green in the crime spree. Further, Green shared the money he took from the victims with Appellant. While driving one victim to the ATM where he was forced to withdraw money, Appellant stated to the victim, "[W]e don't want to be doing this but it's hard times." In his statement, Appellant admitted he drove Green while Green committed the robberies. In other words, the record, even apart from the State's implication that Appellant had a prior criminal record, supported the jury's findings of Appellant's guilt. Further, the statement was brief, not emphasized, and the State did not otherwise refer to the testimony. *See id.* at 359. We conclude that, in the context of the entire case against Appellant, the trial court's action in overruling Appellant's objection to the State's objection while questioning Beard, even if erroneous, did not have a substantial or injurious effect on the jury's verdict and did not affect Appellant's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the error, if any, and overrule Appellant's third issue. *See* Tex. R. App. P. 44.2(b).

## IV. CONCLUSION

We overrule issues one and three. However regarding issue two, we abate this appeal and remand the case to the trial court to enter the required findings of fact and conclusions of law. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6; Tex. R. App. P. 44.4. The trial court shall conduct a hearing, if necessary, and enter its findings of fact and conclusions of law no later than 28

14

days from the date of this memorandum opinion and order. No later than 14 days from the date the findings and conclusions are entered, the trial court shall file a record in this court. The record shall include a supplemental reporter's record, if a hearing is held, and a supplemental clerk's record. Upon our receipt of the supplemental record, the appeal of this cause shall be automatically reinstated without further order for consideration of Appellant's second issue.

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 6, 2013